[Cite as *In re S.N.T.*, 2012-Ohio-3266.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

IN THE MATTER OF:

S.N.T AND S.L.T.

:
:
:
:
:
:
:
:
:

Case No. 12CA2

DECISION AND JUDGMENT ENTRY
**RELEASED:  06/25/12**

_____
APPEARANCES:

Rolf Baumgartel, Marietta, Ohio, for Appellant.

William J. Adams, Marietta, Ohio, for Appellees.
_____
Harsha, J.

{¶1}    M.T. appeals the juvenile court's judgment that awarded legal custody of his two children to the paternal grandparents.  He argues that the court used the wrong legal standard when granting legal custody to the grandparents.  However, M.T. advocated this allegedly wrong legal standard during the trial court proceedings and never argued that a different standard applied.  Under these circumstances, he invited any error.  Thus, we will not consider his argument that the court used the wrong legal standard.  M.T. also asserts that the court improperly determined that he is not a suitable parent.  Because the trial court previously adjudicated the children dependent, it necessarily found M.T. to be an unsuitable parent.  Thus, the court's unsuitability determination is not against the manifest weight of the evidence.  Consequently, we overrule M.T.'s assignment of error and affirm the trial court's judgment.

I.  FACTS

{¶2}    In 2008, the court adjudicated the children dependent due to the parents' alcohol abuse, domestic violence, and criminal convictions.[1]  Between 2008 and June of 2010, the children lived with the paternal grandparents.  In June of 2010, the court awarded the mother legal custody of the children and granted M.T. and the paternal grandparents visitation.  The court's entry cautioned the parents

> "that the children are not to be around alcohol or any anyone [sic] consuming alcohol.  If this Court is presented any future evidence of alcohol use of the mother or father, whether or not in the presence of the children, that parent stands subject to have their rights modified and/or restricted.  Complete sobriety of the parents is not only a counseling goal but is a mandated requirement of this Court.  This Court fully expects both parents to live without alcohol for the rest of their time parenting the minor children and hopefully the rest of their lives."

The court later modified this order and granted shared parenting to M.T. and the mother.

{¶3}    On August 9, 2011, felony domestic violence charges were filed against both parents.  The mother also was charged with operating a motor vehicle while intoxicated and with violating probation.  Ten days later, the children's paternal grandparents filed a motion for legal custody.  They alleged that the parents are unfit due to their lengthy history of substance abuse, violence, and criminal charges.

{¶4}    After a hearing, the trial court awarded the grandparents legal custody of the children.  The court determined that neither M.T. nor the mother is a suitable parent due to "past and continued present history and problems of the parents using and abusing alcohol, the parents' continued household fighting, the father's

---

[1] The trial court took judicial notice of the prior dependency action, but except for the court's June 2010 decision that the grandparents attached to their custody complaint, none of the records from the dependency action were submitted to this court.  Because the parties do not dispute the facts of the dependency actions,  we rely on the trial court's account of the facts as stated in its December 2011 judgment awarding legal custody to the grandparents and on the parties' accounts of the facts to the extent they are consistent with each other and with the trial court's decision.

inappropriate work environment and schedule, [and] the mother's unstable life and requirement of serving additional jail terms * * *."

{¶5}   Regarding the father's "inappropriate work environment and scheduled," the court observed that M.T. works at the Lowell Moose Lodge "every other Monday from 5:30 p.m. to 9:00 p.m.; every Tuesday from 5:30 to 8:00 p.m., every Friday and Saturday evening from 5:30 p.m. to 11:00 p.m., and he also opens every Sunday around 3:00 p.m. and works 4/5 hours after opening up." The court did not believe that his work schedule is

> "conducive to raising two teenage daughters. With that work schedule, [the children] would not see their father Friday evening, Saturday evening, Tuesday evening, most of Sunday, every other Monday evening. When the girls are in school the father would only see them a 2 or 3 [sic] evenings a week. Those work hours are inappropriate for the father to attempt to be the legal custodian and the parent responsible and accountable for the needs of two teenage girls."

The court further explained: "It is the very, very strong opinion of the Court that working at an establishment that sells alcohol by the drink is not a good place for an alcoholic to ever work at. Trust issues relating to alcohol use are evident in the father's family. The father working at what they consider a 'bar' will never help that situation or the father's attempt at sobriety."

{¶6}   The court additionally stated that the parents'

> "sobriety * * * is the key part of this Court's decision. The continued alcohol use of the parents has resulted in numerous arrests, household turmoil, and general chaos in the lives of the children. Some people can responsibly consume alcohol, live productive lives, and take care of all their family needs. Neither the mother nor the father in this case can do that. In an attempt to quantify how bad this Court believes alcohol negatively affects this father and mother's ability to parent and live a productive li[f]e (in this case), the Court on a scale of #1 (being the wors[t]) to #10 (being the best) rates each of the parents a #1. Never before has this Court seen alcohol devastate a family such as it has [this family]."

The court therefore granted legal custody to the grandparents.

## II.  ASSIGNMENT OF ERROR

**{¶7}**    M.T. raises one assignment of error:

"The court below erred in granting the paternal grandparents['] motion for custody."

## III.  ANALYSIS

**{¶8}**    In his sole assignment of error, M.T. asserts that the trial court did not apply the correct legal standard when considering the grandparents' custody motion. He argues that the trial court improperly applied the unsuitability standard set forth in *In re Perales,* 52 Ohio St.2d 89, 369 N.E.2d 1047 (1977), when it should have applied the change-in-circumstance standard contained in R.C. 2151.42.  He contends that under R.C. 2151.42, the court was required to find a change in circumstances before removing the children from his and the mother's custody and awarding legal custody to the grandparents.

**{¶9}**    Within his first assignment of error, M.T. further asserts that the trial court erroneously determined that he is not suitable to have custody of the children.  He contends that the court's finding that his work schedule renders him unsuitable to raise the children is improper when no evidence exists that his work schedule detrimentally affects the children.  M.T. additionally argues that the evidence does not support the trial court's finding that he continued to use, misuse, and abuse alcohol.  He recognizes that some testimony exists that he consumed alcohol on the date of his domestic violence arrest, but he asserts that the greater weight of the evidence shows that he was not impaired on that date.

## A.  INVITED ERROR

**{¶10}**  During the trial court proceedings, M.T. never asserted that the court was required to find a change in circumstance before awarding the grandparents legal custody of the children.  Instead, his argument focused entirely upon the *Perales* unsuitability standard.  "[A]n appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court."  *State v. Gordon*, 28 Ohio St.2d 45, 50, 276 N.E.2d 243 (1971).  Moreover, "[u]nder the invited-error doctrine, a party will not be permitted to take advantage of an error that he himself invited or induced the trial court to make."  *State ex rel. The v. Cos. v. Marshall,* 81 Ohio St.3d 467, 471, 629 N.E.2d 198 (1998) (per curiam).  *Accord State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶86; *State v. Rizer*, 4th Dist. No. 10CA3, 2011-Ohio-5702, ¶27.  Because M.T. never raised the change-in-circumstance standard before the trial court and actively advocated the *Perales* standard, he may not argue on appeal that the court should have used a different standard.  He cannot litigate the custody motion using the *Perales* standard in the trial court and then assert on appeal that the court applied the wrong standard.  He defended the grandparents' custody motion using the *Perales* standard and, thus, invited any error.  Consequently, we will not consider M.T.'s argument that the trial court used the wrong legal standard when evaluating the grandparents' custody motion.

## B.  UNSUITABILITY DETERMINATION

**{¶11}**  Within his first assignment of error, M.T. also argues that the evidence does not support the trial court's unsuitability determination.  Although he does not

frame this as an alternate argument, we perceive it to be so.  Moreover, even though we highly suspect that the *Perales* unsuitability standard is not the correct standard to apply in this case, we evaluate this part of M.T.'s argument using that standard because M.T. invited the error.

**{¶12}**  In a child custody proceeding between a parent and a nonparent, a court may not award custody to the nonparent without first determining that the parent is unsuitable to raise the child, i.e., without determining by a preponderance of the evidence that the parent abandoned the child, contractually relinquished custody of the child, or has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child.  *Perales* at syllabus. The general rule in Ohio regarding original custody awards in disputes between a parent and a nonparent is that "parents who are 'suitable' persons have a 'paramount' right to the custody of their minor children unless they forfeit that right by contract, abandonment, or by becoming totally unable to care for and support those children."  *Id.* at 97, quoting *Clark v. Bayer*, 32 Ohio St. 299, 310 (1877).  *Accord In re B.P.*, 191 Ohio App.3d 518, 2010-Ohio-6458, 946 N.E.2d 818, ¶42.

**{¶13}**  "Although a trial court possesses broad discretion in custody matters, *Reynolds v. Goll*, 75 Ohio St.3d 121, 124, 661 N.E.2d 1008 (1996), it does not have discretion to terminate a parent's right to custody when" the record does not support an unsuitability finding.  *In re B.P.* at ¶44, citing *Perales,* 52 Ohio St.2d at 98.  "Thus, we will review the record under a manifest-weight-of-the-evidence standard to see whether competent, credible evidence supports the trial court's [unsuitability finding]."  *Id.*, citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280, 8 O.O.3d 261, 376 N.E.2d

578 (1978), and *State v. Schiebel*, 55 Ohio St.3d 71, 74–75, 564 N.E.2d 54 (1990). Accord *Cantrell v. Trinkle*, 2nd Dist. No. 2011-CA-17, 2011-Ohio-5288, ¶36.

**{¶14}** "[A] juvenile court adjudication of abuse, dependency, or neglect 'is a determination about the care and condition of a child and implicitly involves a determination of the unsuitability of the child's custodial and/or noncustodial parents.'" *In re James*, 113 Ohio St.3d 420, 2007-Ohio-2335, 866 N.E.2d 467, ¶22, quoting *In re C.R.,* 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, ¶ 22.  Thus, an abuse, dependency, or neglect adjudication equates to a parental unsuitability determination. *James* at ¶27.

**{¶15}** Here, M.T. admits that the court previously adjudicated the children dependent.  Under *James* and *C.R.*, this finding also constitutes a finding that M.T. is not a suitable parent.  Thus, M.T.'s protestations that the court wrongly determined that his work schedule and alleged continued alcohol abuse render him an unsuitable parent are irrelevant.  Because the court already adjudicated the children dependent, it necessarily determined that M.T. is not a suitable parent.  Thus, the trial court's unsuitability determination is not against the manifest weight of the evidence.

**{¶16}** Accordingly, we overrule M.T.'s sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Abele, P.J. & McFarland, J.:  Concur in Judgment and Opinion.


For the Court


BY:  _____
       William H. Harsha, Judge


**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**